UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CHRISTINE DUNNE,<br><br>    Plaintiffs,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendants. | Case No. 13-cv-01195-NJV<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 17 |

## I.  BACKGROUND

Christine Dunne ("Plaintiff") seeks judicial review of an Administrative Law Judge ("ALJ") decision dated August 17, 2011, denying her application for Title II and Title XVI benefits. *See* Administrative Record ("A.R.") 11. Pursuant to the Social Security Act, this Court has subject matter jurisdiction over a final decision by the Commissioner of Social Security (the "Commissioner"). 42 U.S.C. § 405(g). The Commissioner's decision became final when the Appeals Council denied Plaintiff's request for review on February 22, 2013. A.R. 1-6. The parties have consented to this Court's jurisdiction. *See* Doc. Nos. 3 & 8. Therefore, this Court may review and decide Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment.

For the reasons set forth herein, the Court **denies** Plaintiff's motion for summary judgment, and **grants** the Commissioner's cross-motion for summary judgment.

## II.  PROCEDURAL HISTORY

On June 15, 2009, at the age of 38, Plaintiff applied for Social Security Disability benefits. A.R. 16. On September 29, 2009, Plaintiff also filed an application for Supplemental Security

Income. A.R. 118. In both applications, Plaintiff alleged disability beginning November 6, 2008. A.R. 116; 118. The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. A.R. 88-91. Plaintiff requested a hearing by an ALJ, which was held on June 9, 2011. A.R. 11. In an August 2011 decision, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from November 6, 2008, the alleged onset date, through the date of the decision. A.R. 11. On February 22, 2013, the Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner and subject to review. A.R. 1; *see* 42 U.S.C. § 45(g).

### III.   STATEMENT OF FACTS

Plaintiff has a history of mental illness pre-dating 1996, and has been hospitalized on multiple occasions.[1] *See, e.g.,* A.R. 254-303, 283-303, 387-522.

On April 3, 2009, Plaintiff's employer brought her to see Thomas Mirra, Ph.D., reporting erratic behavior.[2] A.R. 305-308. Dr. Mirra found Plaintiff to be fully oriented and able to sustain attention, but so evasive that no reliable information could be obtained. A.R. 306. Dr. Mirra diagnosed Plaintiff with polysubstance abuse. A.R. 309.

On April 18, 2009, Plaintiff suffered a psychotic break, and was hospitalized after leading California Highway Patrol Officers on a high-speed chase.[3] A.R. 266. Although Plaintiff stated that she was bipolar and had a history of psychosis, Elaine Chiu, M.D., found no medical issues preventing Plaintiff from going to jail and released her to police custody. A.R. 266-269.

On April 20, 2009, while in jail, Plaintiff was seen by psychiatrist Taylor Fithian, M.D. Dr. Fithian found Plaintiff coherent, alert and oriented with fair insight and judgment. A.R. 274-277. On May 14, 2009, at the request of the Monterey Superior Court, Dr. Fithian evaluated

---

[1] Following the ALJ's decision, Plaintiff submitted medical records from Natividad Medical Center, dated from July 8, 1996 to August 28, 1996. *See* A.R. 387-523. Although admissible under *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2001), this evidence does not change the outcome of Plaintiff's claim. *See* Section V(5), *infra*.

[2] The court notes that Plaintiff alleges she was terminated from her employment on November 6, 2008, five months before the record reflects that her "employer" brought her to see Dr. Mirra.

[3] Plaintiff was allegedly driving in excess of 100 mph; the chase ended when California Highway Patrol Officers forced Plaintiff off the road. A.R. 280-21. Officers reported that Plaintiff refused to cooperate, and tried to kick and jerk her way out of custody. A.R. 280.

2

Plaintiff to determine whether she possessed the requisite mental competency to stand trial. A.R. 279-282. Dr. Fithian concluded that Plaintiff was incompetent to stand trial by reason of a mental disorder, disease or defect, namely Bipolar Disorder with psychotic features. A.R. 279-282.

On June 7, 2009, Plaintiff was again hospitalized and diagnosed with "Bipolar Disorder, most recent episode mixed, severe, without psychotic features." A.R. 284. Dennis O'Connor, M.D., treated Plaintiff with two mood stabilizers, Zyprexa and Abilify, and occasionally Ativan, to which she responded well.[4] A.R. 355-356. Plaintiff was discharged from the hospital on June 12, 2009, and referred to Marshal Blatt, M.D. for continued psychiatric care. A.R. 355-356.

On July 7, 2009, Plaintiff began treatment with her primary treating physician, Dr. Blatt. A.R. 311-312, 357-358. Dr. Blatt diagnosed Plaintiff with Schizoaffective Disorder, bipolar type, and prescribed psychiatric medications. A.R. 311. Plaintiff complained of agoraphobia on several occasions, but Dr. Blatt never diagnosed her with the disorder. *See, e.g.,* A.R. 360, 375, 377; *see also* A.R. 64-70. Around the same time, Plaintiff told Dr. Blatt of vacations she took to Disneyland and Bass Lake, and of winning a Halloween costume contest. *See* A.R. 369, 372, 374.

On September 29, 2009, Plaintiff was evaluated by Christopher Sanders, Ph.D., an SSA psychological consultative examiner. A.R. 318-322. Dr. Sanders diagnosed Plaintiff with Bipolar I disorder, in remission. A.R. 321-22. Dr. Sanders noted that Plaintiff accepted her illness and was compliant with her psychiatric medications for the first time. A.R. 322. Although Plaintiff reported experiencing manic phases in the five months preceding Dr. Sanders' examination, she did not report experiencing manic phases during any other periods. A.R. 22. Dr. Sanders opined that Plaintiff's ability to complete a normal workday/workweek without interruptions at a constant pace was *slightly* impaired, but that her ability to interact with coworkers and to deal with various changes in the work setting was adequate. A.R. 322 (emphasis added). Dr. Sanders concluded that there was a low likelihood of Plaintiff emotionally deteriorating in the work environment. A.R. 22.

Between December 3, 2009 and February 2011, Dr. Blatt repeatedly remarks that Plaintiff

---

[4] Dr. O'Connor had also treated Plaintiff during her 1996 hospitalization at Natividad Medical Center. *See, e.g.,* A.R. 387-522.

was doing well with treatment.[5] A.R. 364 (Plaintiff was "doing well on current regimen treatment"). Dr. Blatt's records show that, with medication compliance, Plaintiff continued to improve in the months that followed, through 2010 and into 2011. *See* A.R. 365 (Plaintiff "doing better with medication compliance" on 1/5/10); A.R. 366 (Plaintiff "doing well" on 2/2/10); A.R. 366 (Plaintiff "doing seemingly extraordinarily well" on 3/4/10); A.R. 367 (Plaintiff "currently stable on current regimen of medications" on 4/7/10); A.R. 368 (Plaintiff "stable on regimen of mood stabilizers and antipsychotics" on 5/6/10); A.R. 369 (Plaintiff "doing really extraordinarily well" on 6/11/10); A.R. 370 (Plaintiff "doing very well with medication compliance" on 7/16/10); A.R. 371 (Plaintiff was "much improved with medication compliance on 8/12/10); A.R. 372 (Plaintiff "stable on current regimen of medications" on 9/9/10); A.R. 373 (Plaintiff was "medication compliant and seemingly doing very well" on 10/7/10); A.R. 374 (Plaintiff "doing much better with medication compliance" on 11/4/10); A.R. 377 (Plaintiff "overall is stable" on 2/3/11); A.R. 378 (Plaintiff "overall stable at low baseline).

During this time, Plaintiff herself regularly reported that she was doing well during this time period. *See, e.g.,* A.R. 364-378.

## IV.  LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), the findings of the Commissioner, "as to any fact, if supported by substantial evidence, shall be conclusive." *See* 42 U.S.C. § 405(g). The denial of benefits can only be set aside if there is no support of substantial evidence or if the decision is based on legal error. *See Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate

---

[5] Following the ALJ's decision, Plaintiff submitted a letter from Dr. Blatt dated October 4, 2011, in which he states, "[i]n my opinion, Ms. Christine Dunne suffers from a chronic mental disorder with significant impairment. I think her medication treatment during this time I have been her doctor has helped her significantly, but usually people with schizoaffective disorder cannot be restored to the workforce." A.R. 523. Although admissible under *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2001), this evidence does not change the outcome of Plaintiff's claim as discussed in section V(3)(b), below.

to support a conclusion." *Flaten*, 44 F.3d at 1457. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. In addition, the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## V. DISCUSSION

The ALJ evaluated Plaintiff's application for benefits using the five-step sequential process that is required by the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920 (2009). In the first four steps, the burden of proof rests upon the claimant to establish entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.3d 920, 921 (9th Cir. 1971). At the fifth and final step, the burden shifts to the ALJ to show that (1) the claimant can perform substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" that claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**1. The ALJ's determination that Plaintiff has not performed Substantial Gainful Activity was supported by substantial evidence.**

Plaintiff does not challenge that ALJ's determination at Step One.

**2. The ALJ's determination that Plaintiff suffered from a single medically severe impairment of bipolar disorder was supported by substantial evidence; the ALJ's failure to find that Plaintiff suffered from PTSD or agoraphobia was not error.**

At the second step, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirements in §§ 404.1509 or 416.909, or a combination of impairments that is severe and meets the duration requirement, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). "Severe" is defined as significantly limiting physical or mental ability to do basic work. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found Plaintiff to have a severe mental impairment of bipolar disorder.[6] A.R. 13.

---

[6] The ALJ determined that Plaintiff's lower back pain was nonsevere. Plaintiff has not disputed this determination; therefore, the court does not consider it on appeal.

5

In her motion for summary judgment, Plaintiff contends that the ALJ improperly evaluated Plaintiff's impairment as bipolar disorder because she actually suffers from "schizoaffective with post-traumatic stress disorder comorbid with agoraphobia" and that the ALJ's evaluation should have stopped at the second step. Both contentions are without merit.

### a. There is no substantial evidence in the record to support Plaintiff's argument that she suffers from PTSD or agoraphobia.

There is no substantial evidence in the record that Plaintiff suffers from Post-traumatic stress disorder (PTSD). *See, e.g.*, A.R. 310-313, 337-340, 346-378 (Dr. Blatt did not diagnose Plaintiff with PTSD); 274-282, 379-386 (Dr. Fithian did not diagnose Plaintiff with PTSD); A.R. 283-287 (Dr. O'Connor did not diagnose Plaintiff with PTSD); 292-293 (Dr. Singh did not diagnose Plaintiff with PTSD); 314-317, 323-333, 341-342 (DDS Physicians did not diagnose Plaintiff with PTSD). Furthermore, Plaintiff cites no evidence in the record supporting a diagnosis of PTSD. *See* Doc. No. 16. Therefore, the ALJ did not err in finding that Plaintiff did not suffer from PTSD.

Similarly, there is no substantial evidence in the record that Plaintiff suffers from agoraphobia. Plaintiff self-diagnosed herself with agoraphobia, but no treating or examining physician has diagnosed her with this condition. *See* A.R. 64-65, 314, 375; *see also* A.R. 310-313, 337-340, 346-378 (Dr. Blatt did not diagnose Plaintiff with agoraphobia but rather recorded Plaintiff's report of agoraphobia as a symptom of her illness); 274-282, 379-386 (Dr. Fithian did not diagnose Plaintiff with agoraphobia); A.R. 283-287 (Dr. O'Connor did not diagnose Plaintiff with agoraphobia); 318-322 (Dr. Sanders did not diagnose Plaintiff with agoraphobia); 314-317, 323-333, 341-342 (DDS Physicians did not diagnose Plaintiff with agoraphobia). Furthermore, Plaintiff cites to no evidence in the record supporting a diagnosis of agoraphobia. *See* Doc. No. 16. Accordingly, the ALJ properly did not list agoraphobia as a severe impairment at step two.

### b. The ALJ did not err in continuing to analyze Plaintiff's disability after finding that Plaintiff suffered from bipolar disorder.

"Schizoaffective" is merely another term for bipolar disorder. *See* A.R. 60; 20 C.F.R. Part 404, Subpart P, Appendix 1§ 12.04. Multiple treating and DDS physicians have diagnosed

1   Plaintiff with Bipolar Disorder. *See, e.g.*, A.R. 310-313, 337-340, 346-378 (Treating Physicians); 314-317, 323-333, 341-342 (DDS Physicians). The ALJ's finding that Plaintiff's bipolar disorder was a severe impairment is supported by substantial evidence. The ALJ's characterization of that impairment as bipolar disorder instead of as "schizoaffective disorder" is not error.

The ALJ also properly proceeded to Step Three after finding that Plaintiff suffered from a severe impairment. Only a finding that a claimant is *not* severely impaired will terminate the five-step sequential evaluation process at step two. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In such a circumstance, the termination of the process results in the denial of benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Therefore, having determined that Plaintiff suffers from a medically severe impairment at step two, the ALJ properly proceeded to step three.

### 3. The ALJ's findings at step three were supported by substantial evidence.

At the third step, the ALJ assesses the medical severity of the claimant's impairments by comparing them to a list of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. The claimant bears the burden of showing that her impairment qualifies as a listed impairment. *Rhinehart*, 438 F.2d at 921. If the claimant is successful, a disability is presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(d), 416.920(a)(4)(ii), 416.920(d). If the claimant is unsuccessful at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).

Here, evaluating Plaintiff's severe impairment under Listing 12.04 (Affective Disorders), the ALJ determined that Plaintiff's impairment did not meet or medically equal the criteria of a listing. A.R. 14. Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limits: the claimant can perform simple, repetitive tasks with occasional contact with coworkers and no contact with the general public." A.R. 15.

In her motion for summary judgment, Plaintiff contends that the ALJ (a) improperly

determined that Plaintiff's severe impairment did not meet or medically equal Listing 12.04, and (b) improperly determined Plaintiff's RFC because she improperly weighed the medical evidence.[7] *See* Doc. No. 16 at 1-3.  Both of these contentions lack merit.

### a. The ALJ's determination that Plaintiff's severe impairment did not meet or medically equal Listing 12.04 was supported by substantial evidence.

Where, as here, a mental impairment has been found to be severe at step two, the next step in the evaluation process is to determine if the impairment qualifies as, or is equivalent in severity to, a listed disorder.  In order to meet or equal an affective disorder under Listing 12.04, Plaintiff's impairment must satisfy (1) both the paragraph A and paragraph B requirements, or (2) the paragraph C requirements detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1§ 12.04.

To meet the paragraph B requirements, Plaintiff must have a "marked" restriction in two of the three listed areas, or a "marked" restriction in one area coupled with repeated episodes of decompensation of extended duration.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.  A "marked" rating indicates a higher degree of limitation than a "mild" or "moderate" rating.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1200(c).

Here, the ALJ found that Plaintiff's impairment caused a *mild* restriction in activities of daily living, a *moderate* restriction in social functioning, and a *moderate* restriction in concentration, persistence, or pace, and one to two episodes of decompensation of extended duration.  A.R. 14 (emphasis added).  These functional assessments were based on Plaintiff's statements, the opinion of the psychological consultative examiner, Dr. Sanders, and the opinion of the impartial medical expert, Dr. Simonds.  *See* A.R. 14; *see also* A.R. 70-79, 116-121, 152-159 (Plaintiff's statements), 318-322 (Dr. Sanders), 57-70 (Dr. Simonds).  Plaintiff participated in a variety of activities of daily living, including caring for her children and pets, cooking, cleaning, gardening, and grocery shopping with her family.  *See* A.R. 70-79; *see also* 152-159.  Dr. Sanders' report reflected similar activities of daily living and adequate social functioning.  *See* A.R. 321.

---

[7] In her cross-motion for summary judgment, the Commissioner countered that the ALJ properly found that Plaintiff did not meet a listing and that the ALJ properly evaluated the medical opinion evidence, and properly evaluated Plaintiff's RFC.  *See* Doc. No. 17 at 8, 9, 11.

Dr. Simonds testified that Plaintiff's mental impairment caused a mild restriction in activities of daily living, a moderate restriction in her concentration, and a moderate restriction in social functioning. *See* A.R. 58, 64. This testimony was consistent with Plaintiff's treatment records. *See* A.R. 310-313, 337-340, 346-378 (Dr. Blatt); 278-282, 379-386 (Dr. Fithian). Furthermore, there is no evidence in the record that Plaintiff suffered from any "marked" restrictions in the year prior to applying for Social Security benefits. Therefore, the ALJ's conclusion that the paragraph B criteria was not satisfied was supported by substantial evidence.[8]

To meet the paragraph C criteria for affective disorders, Plaintiff must have a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual do decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

Here, the ALJ found "no evidence of repeated episodes of decompensation, a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or current history of one or more years' inability to function outside a highly supported living arrangement with an indication of continued need for such an arrangement." A.R. 15. No treating physician recorded medical evidence sufficient to meet the paragraph C criteria. *See* A.R. 310-313, 337-340, 346-378 (Dr. Blatt); 278-282, 379-386 (Dr. Fithian). Similarly, neither the consultative examiner nor the DDS physicians recorded evidence sufficient to meet the paragraph C criteria. *See* A.R. 318-322 (consultative examiner); 323-336, 341-342

---

[8] Having determined that Plaintiff did not meet or medically equal the paragraph B criteria, the ALJ did not analyze the paragraph A criteria.

9

1  (DDS physicians). Finally, Plaintiff cites to no evidence in the record to support her argument that
2  she meets this listing, and the court has found none. *See* Doc. No. 16. Therefore, the ALJ's
3  conclusion that the paragraph C criteria was not satisfied was supported by substantial evidence.

### b. The ALJ properly considered the medical opinion evidence from Plaintiff's treating physician, Dr. Blatt.

6  In determining a claimant's RFC, an ALJ must assess all of the evidence - including the
7  claimant's and others' descriptions of limitations and medical reports - to determine what capacity
8  the claimant has for work despite her impairment. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).
9  Here, the ALJ considered all of the evidence, including Plaintiff's subjective reports of symptoms,
10 the third party function report completed by Plaintiff's sister, Elizabeth Doolittle, the records of
11 Plaintiff's treating physicians, the records of the impartial medical expert, and the records of the
12 state agency examining and consultative physicians. *See* A.R. 15-20.

13 The opinion of a treating physician is to be given controlling weight when the opinion is
14 "well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent
15 with other substantial evidence in the record." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).
16 The treating physician's opinion is not, however, necessarily conclusive as to the ultimate issue of
17 disability. *Magallanes*, 881 F.2d at 751. For example, the ALJ need not accept a treating
18 physician's opinion which is "brief and conclusionary in form with little in the way of clinical
19 findings to support [its] conclusion." *Id.* at 751. If the treating physician's opinion is
20 uncontradicted in the record, the ALJ may only reject the opinion for "clear and convincing
21 reasons." *Lester v. Chater*, 81 F.3d 821, 830 (1995). If the treating physician's opinion is
22 contradicted, the ALJ may reject the opinion for "specific and legitimate" reasons. *See id.*

23 Here, the ALJ considered, but did not give significant weight to, the opinion of Plaintiff's
24 primary treating physician, Dr. Blatt. Dr. Blatt's opinion was contradicted by the SSA examiner
25 and the expert witness. *See* A.R. 57-69, 318-322. The ALJ offered "specific and legitimate"
26 reasons for discounting Dr. Blatt's opinion. *See* A.R. 18, 19. The ALJ observed that Dr. Blatt
27 failed to document objective clinical or diagnostic findings to support the assessed functional
28 limitations, and that his assessment was inconsistent with the record as a whole, including his own

treatment notes. *See* A.R. 20, 353-378. For example, while Dr. Blatt diagnosed Plaintiff as with schizoaffective disorder and opined that people with schizoaffective disorder *usually* cannot be restored to the workforce, his treatment records indicate a significant improvement in Plaintiff's condition with medication compliance. *See* A.R. 337-340, 346-378, 523 (emphasis added). Indeed, he noted that Plaintiff "[did] seemingly extraordinarily well . . . [with medication compliance]." A.R. 366. Given this inconsistency, the ALJ properly discounted Dr. Blatt's opinion, considering it along with all other medical evidence by weighing multiple factors rather than giving it controlling weight.[9] *See* A.R. 20.

### 4. The ALJ's finding that someone with Plaintiff's RFC could not perform Plaintiff's past relevant work is supported by substantial evidence.

At the fourth step, the ALJ considers the claimant's RFC and her past work experience to determine whether a claimant can perform her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Here, because Plaintiff's RFC limited her to performing simple, repetitive tasks with occasional contact with coworkers and no contact with the general public, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a home health worker, sales associate, nurse's assistant, or real estate agent. *See* A.R. 15, 21. Neither party has contested this finding.

### 5. The ALJ's finding that Plaintiff could engage in gainful activities that exist in significant numbers in the national economy is supported by substantial evidence.

At the fifth and final step, the ALJ considers claimant's RFC, age, education, and work experience to see if she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g) . If the claimant cannot make an adjustment to other work, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f),

---

[9] "With respect to the treating source, these factors include the length of the treatment relationship, the frequency of examination, and the nature and extent of the relationship. With respect to all medical opinions, these factors include testing and consultative evaluations by specialists; supportability, including the degree of explanation and support by objective evidence; consistency with the record as a whole; degree of specialization in the area of medicine involved; the level of awareness of other evidence in the record; and the level of understanding of social security disability programs and requirements." A.R. 20.

11

404.1560(c), 416.920(a)(4)(v), 416.920(f), 416.960(c). Here, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, considering Plaintiff's age, education, work experience and RFC. A.R. 22. Plaintiff contends that she is unable to make such an adjustment as an employer would not tolerate absences incurred due to Plaintiff's impairment. This contention is not supported by the record.

The ALJ's findings at step five are consistent with the testimony of the vocational expert, Darlene McQuary, who testified that an individual of Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as industrial cleaner, agricultural produce sorter and housekeeping cleaner. A.R. 22, 80-86. Plaintiff relies heavily on Vocational Expert McQuary's response to a hypothetical posed by the ALJ in support of her contention that she is unable to engage in gainful activities. Doc. No. 18 at 2. The ALJ asked McQuary if an individual's inability to complete a workday or workweek three times per month would change that individual's ability to engage in gainful activities that exist in significant numbers in the regional economy. A.R. 83. McQuary responded that these limitations would eliminate the jobs that could otherwise be performed by someone of Plaintiff's age, education, work experience, and RFC. A.R. 83. However, no treating, examining or consultative physician has indicated that Plaintiff's impairment would cause her miss work with such frequency. *See, e.g.*, A.R. 310-313, 337-340, 346-378 (treating physicians); 318-322 (consultative examiner); 314-317, 323-333, 341-342 (DDS physicians). On the contrary, the record demonstrates a lengthy period of employment between 1996-2008, notwithstanding Plaintiff's longstanding impairment and associated symptoms. *See* A.R. 160-172 (work history report); 387-521 (1996 medical evidence). Therefore, the ALJ's determination at step five was supported by substantial evidence.

**VI.    CONCLUSION**

For the foregoing reasons, the undersigned denies Plaintiff's motion for summary judgment and grants the Commissioner's cross motion for summary judgment.  The court will enter a separate judgment.

The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED**.

Dated: April 9, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge